UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>VICTORIA GABRIEL RODRIGUEZ-<br>MORALES,<br>Defendant. | CRIM. NO. 23-435(PAD) |

## UNITED STATES' SENTENCING MEMORANDUM

TO THE HONORABLE COURT:

COMES NOW the United States of America, through the undersigned attorney, and submits this sentencing memorandum in aid of the Court for the purposes of sentencing the above-captioned defendant.

1. <u>The Offense Conduct as Stipulated in the Plea Agreement</u>

Victoria G. Rodriguez-Morales did knowingly and willfully transmit in interstate and foreign commerce from the Commonwealth of Puerto Rico to State of Texas and to other locations, communications containing threats to injure the person of another.

| Count | Date | Communication Method | Recipient | Threat |
|---|---|---|---|---|
| 1 | On or about May 21, 2023 | Instagram Account @pilon_gaby | City of Uvalde | *I will haunt everyone from class 2022 to 2023 Each and every single one of y'all will die in the name of Salvador* |
| 3 | On or about May 21, | Instagram Account @pilon_gaby | Texas Children's Hospital | *Your childrens hospital may blow in pieces If yall dont do as i say* |

1

| | | | |
|---|---|---|---|
| | 2023 | | | |
| 5 | On or about September 28, 2023 | schoolshooter7878@gmail.com | Uvalde CISD | *Ohh can I tell you that there will be bombs at the uvalde memorial hospital*<br>*O shit I just spoiled one of them surprises* |
| 6 | On or about September 30, 2023 | schoolshooter7878@gmail.com | Uvalde City Hall | *We will shoot Uvalde Texas high school an Texas A&M college This shit will happen even if I die* |
| 12 | On or about October 25, 2023 | Facebook account Gabriela Morales (61552295398566) | Atascosa County Juvenile Justice Center's | *Y'all treated me like shit and for that all of you are going to pay We will shoot uvalde texas high school, Texas A&M and blow ACJJC the fuck up to the sky I will not regret none of the losses y'all can experience Se y'all on the news* |
| 13 | On or about October 28, 2023 | Facebook account Gabriela Morales (61552295398566) | Zavala County Sheriff's Office | *We will shoot uvalde texas high school* |

At the time she made the threats, Rodriguez-Morales resided and was in the District of Puerto Rico. The threats were sent across state lines over the internet and were directed at persons or institutions located in the state of Texas who received them.

Rodriguez-Morales used Instagram, Facebook, and Gmail accounts to transmit these threats in interstate commerce. She also used an iPhone serviced by Puerto Rico Telephone company d/b/a Claro to transmit these threats.

Instagram, Facebook, Google's Gmail, Claro, and Apple iPhones were means and instrumentalities of interstate and foreign commerce.

2. <u>Victim Impact</u>

As a result of Defendant's actions, the City of Uvalde and its police department dedicated extensive hours to investigating the threats made by the defendant. The threats were manifested in different forms, posing risks to the safety and well-being of the residents. The negative effects on the community ranged from heightened anxiety and fear to a decline in the overall sense of security. This emotional toll cannot be quantified. The Chief of Police believes that the community faces challenges in restoring a sense of normalcy and rebuilding trust that was eroded by the incidents.

Defendant's conduct alarmed and caused a major disruption to students, staff, and the Uvalde Consolidated Independent School District (Uvalde CISD) community. Because of the incident of May 24, 2022[1], all threats have a negative impact on the community; the parents would come and sign their child out of school because of a threat made by the defendant. This resulted in major traffic issues and chaos. Uvalde CISD has not received a single threat since the defendant has been held.

The impact on the Uvalde CISD and the community was described as follows:

a) Fear, Trauma, & Distress: The community is still recovering from the tragedy at Robb Elementary. These threats, explicitly referencing the mass shooting, reopen wounds for survivors, families of victims, students, and staff.

---

1 On May 24, 2022, a young male identified as Salvador Ramos, shot and killed 19 students and 2 teachers at the Robb Elementary School in Uvalde, Texas. Many others were injured. Many threats by Ms. Rodríguez-Morales referenced the events committed by Ramos at the Robb Elementary School in Uvalde, Texas.

b) Disruption to School operations & Safety Protocols: Because of the threats, Uvalde CISD devoted additional time, energy, and resources toward safety measures: assessing threats, communication with law enforcement, adding additional law enforcement, and adding additional counseling services.

c) Psychological Toll on Students and Staff: Students are anxious; many feel unsafe returning to school, particularly when a known individual is making direct threats. Teachers, administrators, and other staff are under heightened stress, not only from their duties, but from the responsibility of safeguarding children in an environment where threats are made repeatedly. Counselors and mental health staff were stretched, trying to support those who are triggered by statements or by hearing about threats.

d) Impact on Learning & Community Trust: Learning is disrupted when fear is present. Some families kept children home. Some staff felt less able to focus on instruction due to safety concerns. In the long term, trust in the school as a place of safety was eroded. For many, school is not only about education, it's a sanctuary. These threats challenged that foundation.

e) Resource Strain: Uvalde CISD had to reallocate resources – financial, human, logistical – to manage safety and crisis response: coordinating with law enforcement, maintain security protocols, training staff, and communicating with families. These are resources that could otherwise be used for educational programs, extracurriculars, or student supports.

f) Community-wide Impact: The ripple effects extend into the larger Uvalde community. Families, neighbors, local businesses, health services, and law enforcement were on alert, vigilant, and lived with increased tension.

3.  <u>The United States Sentencing Recommendation</u>

Pursuant to the Plea Agreement (ECF No. 45), the parties agreed to jointly request a sentence of 24 months of imprisonment followed by a supervised release term of three years.

Under the Plea Agreement, and as recommended by the United States Probation Office for the District of Puerto Rico (USPO) at ¶ 129 of ECF No. 51 ("PSR"), upon release from confinement, and as part of her supervised release term, Defendant will start a 12-months residential program at ASSMCA Residential Treatment Center for Women. A bed space has opened up for October 30th, 2025. To avoid disrupting Defendant's path to rehabilitation, we don't object to a sentence of time served with the condition that Defendant be released directly to personnel from the ASSMCA program.[2]

The United States requests that Defendant's supervised release condition also include all the special conditions recommended by the USPO at ¶ ¶ 129-140 including the following:

---

[2] Defendant was arrested on November 28, 2025. Thus, as of the date of sentencing, Defendant will have served over 23 months of imprisonment. Although she has lost good time credit due to disciplinary sanctions (ECF No 51 at ¶ 25), we understand that a reduction of less than one month from the time stipulated in the Plea Agreement is warranted to ensure that she receives proper treatment immediately upon release.

- The defendant shall not travel outside the supervising district without prior Court authorization.
- The defendant must not knowingly enter any school, university, and/or educational institution, other than an institution in which she is enrolled, without first obtaining the authorization of the U.S. Probation Officer.
- No Unsupervised Contact with Victims.
- The defendant must allow the probation officer to install computer monitoring software on any computer.
- Defendant must allow the probation officer to conduct initial and periodic unannounced searches of any computers subject to computer monitoring.
- The defendant shall participate in a program or course of study aimed at improving educational level and/or complete a vocational training program.
- The defendant shall participate in an approved mental health treatment program for evaluation and/or treatment services determination.

4.  Guideline Calculations in the Plea Agreement

The parties reached the following sentencing guideline calculations in the Plea Agreement (ECF No. 45):

| SENTENCING GUIDELINES CALCULATIONS<br>Counts One, Three, Five, Six, Twelve and Thirteen<br>18 U.S.C. § 875(c) | | | | | |
|---|---|---|---|---|---|
| Base Offense Level pursuant to U.S.S.G. § 2A6.1(3) | | 12 | | | |
| Offense involved more than two threats pursuant to U.S.S.G. § 2A6.1(b)(2) | | +2 | | | |
| Units added pursuant to U.S.S.G. § 3D1.4 | | +5 | | | |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | | -3 | | | |
| **TOTAL ADJUSTED OFFENSE LEVEL** | | **16** | | | |
| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
| 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |

It should be noted that the dismissed counts would not have increased the total adjusted offense level given the fact that the amounts of units that may be added under U.S.S.G. 3D1.4 is capped at 5.

5. <u>Guideline Calculations in the Pre-sentence Report</u>

After consideration of the charge and facts related to the above-captioned case, the USPO also reached a total offense level of 16. ECF No. 5 at ¶ 53. With a criminal history category of I, the USPO determined the guideline imprisonment term to be 21-27 months. *Id.* at ¶ 112. Thus, the parties agreed-upon recommendation of 24 months falls in the middle of the calculated guideline range.

6. <u>Summary of Defendant's Background</u>

Defendant is now 21 years old. Her physical and mental health are addressed at paragraphs 75-92 of the PSR. The report by Dr. Margarida, and the facts contained therein, weight heavily as mitigation in this case.

Without going into the specifics of her mental health, it bears noting that Defendant was seriously affected by her parents' separation and the events surrounding it as detailed in paragraph 63 of the PSR. Growing up she enjoyed outdoor activities such as taking care of horses and riding motorcycles. *Id.* at ¶ 64. In 2018, due to Hurricane Maria and related financial hardships, her family relocated to Texas. *Id.*

She previously faced juvenile proceedings in Texas for conduct similar to the one charged in the Indictment. PSR at ¶ 55. She was enrolled in a residential treatment program.

Later, supervision was terminated with the agreement that she leave Texas and return to Puerto Rico. *Id.* She would have liked to remain in Texas as her family resided in a pecan farm and she used to run through the farm with friends. *Id.* at ¶ 66.

Regarding her time in the program, she claimed to have suffered racism and spending a lot of time in disciplinary segregation. *Id.* at ¶ 65. The experience was not good for her, and that she felt a lot of desperation and incurred in self-harm. *Id.*

At the time of her arrest, she was enrolled in her first semester of a veterinary sciences program. *Id.* at ¶ 67. Before that, she enjoyed driving her friend to their college campus, going to the beach, spending time with her three dogs, playing videogames with her brother, listening to music, construction, and gardening. *Id.* at ¶ 69She also practiced martial arts and played basketball. *Id.*

In accepting responsibility for her offenses, she indicated that her conduct was motivated by thoughts of thoughts of rage, resentment, and sadness that kept hidden and festering inside of her. *Id.* at ¶ 35. It was reported that he used drugs and alcohol as a form of self-medication to numb distressing recollections of past events, and anticipatory anxiety about impending danger. *Id.* at ¶ 95.

During her term of imprisonment, she has incurred in multiple disciplinary violations. *Id.* at ¶ 25. She has also taken multiple courses. *Id.* at ¶ 26.

7. <u>Sentencing Procedure, 18 U.S.C. § 3553 Factors</u>

District courts should follow a standard procedure when sentencing defendants. That standard was set forth in *Gall v. United States*, 552 U.S. 38 (2007).   According to

that precedent, the district court's "starting point" is to determine the advisory sentencing range under the Guidelines. *Id.* at 49. That includes resolving any objections to the presentence report. *United States v. Laureano-Perez*, 797 F.3d 45, 80 (1st Cir. 2015). The parties then present their arguments on what they believe is the appropriate sentence. *Gall*, 552 U.S. at 49. After that, the district court must weigh the factors in section 3553(a) to determine whether they support the sentences requested by the parties. *Id.* A district court errs in performing this procedure by treating the Guidelines as obligatory rather than advisory, *id.* at 51, or presumptively reasonable, *United States v. Nelson*, 555 U.S. 350, 352 (2009) (per curiam). The district court is required to provide an explanation for the sentence it determines is appropriate; that allows for meaningful appellate review and promotes the perception of fair sentencing. *Gall*, 552 U.S. at 50.

Pursuant to 18 U.S.C. § 3553(a), a sentencing court must consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

9

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established ...

(5) any pertinent policy statement—

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

8. <u>Conclusion</u>

In weighing the factors under 18 U.S.C. § 3553, and making their recommendation to the Court, the parties have placed special emphasis on Defendant's age, mental health history, and need for future mental health treatment.

With that in mind we submit that a sentence of time served (over 23 months) followed by three (3) years of supervised release that will include 12 months of inpatient treatment, is sufficient and not greater than necessary to address the sentencing factors. It is our sincere hope that this sentence will place Defendant in the path to rehabilitation and protect the community from further victimization. To that end, we request that Defendant be released directly to personnel from the ASSMCA program so that she may begin her three years of supervision.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this October 23, 2025.

W. Stephen Muldrow
United States Attorney

*S/Jeanette M. Collazo-Ortiz*
Jeanette M. Collazo-Ortiz
Assistant United States Attorney
USDC No. 226803
350 Chardon Avenue;
Torre Chardon, Suite 1201
Hato Rey, Puerto Rico, 00918
Tel: 787-772-3970
Fax: 787-766-5398
Email: jeanette.collazo@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this same date, this motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to defense counsel.

*S/Jeanette M. Collazo-Ortiz*
Jeanette M. Collazo-Ortiz
Assistant United States Attorney